UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC, | § § § | |
| Plaintiff, | § | Civil Action No. _____ |
| v. | § § | JURY TRIAL REQUESTED |
| LANDIS+GYR INC.; ACLARA POWER-LINE SYSTEMS INC.; ELSTER SOLUTIONS, LLC; SILVER SPRING NETWORKS, INC.; ITRON, INC.; and TRILLIANT NETWORKS INC., | § § § § § § | |
| Defendants. | § § § | |

### PLAINTIFF EON CORP. IP HOLDINGS, LLC'S ORIGINAL COMPLAINT

Plaintiff EON Corp. IP Holdings, LLC ("EON") files this Complaint for patent infringement against Landis+Gyr Inc. ("Landis+Gyr"); Aclara Power-Line Systems Inc. ("Aclara"); Elster Solutions, LLC ("Elster"); Silver Spring Networks, Inc. ("Silver Spring"); Itron, Inc. ("Itron"); and Trilliant Networks Inc. ("Trilliant") (collectively, the "Defendants") for infringement of U.S. Patent No. 5,388,101 (the "'101 Patent"), U.S. Patent No. 5,481,546 (the "'546 Patent"), and U.S. Patent No. 5,592,491  (the "'491 Patent") (collectively, the "Patents-in-Suit") pursuant to 35 U.S.C. §271, alleging as follows:

### THE PARTIES

1.      Plaintiff EON is a Texas limited liability company with its principal place of business at 719 W. Front Street, Suite 108, Tyler, Texas 75702.

2.      Defendant Landis+Gyr is a Delaware corporation with its corporate headquarters at 2800 Duncan Road, Lafayette, Indiana 47904 and can be served with process through its

registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3.      Defendant Aclara is a Missouri corporation with its corporate headquarters at 945 Hornet Drive, Hazelwood, Missouri 63042.  Aclara engages in business in but does not maintain a regular place of business in Texas and has not designated or maintained a resident agent for service of process.  Accordingly, pursuant to Federal Rule of Civil Procedure 4, section 17.044 of the Texas Civil Practice and Remedies Code, and Articles 2.11 of the Texas Business Corporations Act, the Texas Secretary of State is designated as Aclara's agent for service of process in this action.  The Texas Secretary of State Citations Unit may be served at P.O. Box 12079, Austin, Texas 78711-2079 by certified mail, return receipt requested.  Pursuant to section 17.045(a) of the Civil Practice and Remedies Code, the Secretary of State shall forward citation and a copy of this Complaint to Aclara's home or home office, c/o CSC – Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

4.      Defendant Elster is a Delaware limited liability company with its headquarters at 201 S. Rogers Lane, Raleigh, North Carolina 27610 and can be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

5.      Defendant Silver Spring is a Delaware corporation with its corporate headquarters at 555 Broadway Street, Redwood City, California 94063.  Silver Spring engages in business in but does not maintain a regular place of business in Texas and has not designated or maintained a resident agent for service of process.  Accordingly, pursuant to Federal Rule of Civil Procedure 4, section 17.044 of the Texas Civil Practice and Remedies Code, and Articles 2.11 of the Texas Business Corporations Act, the Texas Secretary of State is designated as Silver Spring's agent

for service of process in this action.  The Texas Secretary of State Citations Unit may be served at P.O. Box 12079, Austin, Texas 78711-2079 by certified mail, return receipt requested. Pursuant to section 17.045(a) of the Civil Practice and Remedies Code, the Secretary of State shall forward citation and a copy of this Complaint to Silver Spring's home or home office, c/o National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware 19904.

6.     Defendant Itron is a Washington corporation with its corporate headquarters at 2111 North Molter Road, Liberty Lake, Washington 99019 and can be served with process through its registered agent, National Registered Agents, Inc., 16055 Space Center Blvd., Suite 235, Houston, Texas 77062.

7.     Defendant Trilliant is a Delaware corporation with its corporate headquarters at 1100 Island Drive, Redwood City, California 94065 and can be served with process through its registered agent, C T Corporation System, 350 North Saint Paul Street, Suite 2900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

8.     This is an action for patent infringement under the patent laws of the United States, Title 35 of the United States Code, including 35 U.S.C. §§ 271 et seq. and 281-285.  This Court has subject matter under 28 U.S.C. §§ 1331 and 1338(a).  Venue lies in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

9.     Each Defendant is subject to this Court's personal jurisdiction under the laws of the State of Texas, including the Texas long-arm statute, TX. CIV. PRAC. & REM §17.042.  On information and belief, each Defendant has substantial contacts with the forum as a result of pervasive business activities conducted within the State of Texas and within this District,

including but not limited to the marketing, sale and distribution of two-way communication networks, network components, related software platforms and services.

10.     On information and belief, each Defendant has committed acts of patent infringement in this District directly and/or through agents and intermediaries, including by offering for sale (e.g., through the provision of interactive web pages), selling, or importing products or services that infringe at least one claim of each of the Patents-in-Suit, or by knowingly using or inducing others to use products or services that infringe at least one claim of each of the Patents-in-Suit, or by offering for sale, selling, or importing products or services in the State of Texas that contribute to the infringement of each of the Patents-in-Suit.

## THE PATENTS-IN-SUIT

11.     On February 7, 1995, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '101 Patent entitled "Interactive Nationwide Data Service Communication System for Stationary and Mobile Battery Operated Subscriber Units" after a full and fair examination.  EON is the assignee under an exclusive license of all rights, title, and interest in and to the '101 Patent and possesses all rights of recovery under the '101 Patent, including the right to recover damages for past infringement.  The '101 Patent is valid and enforceable.  A true and correct copy of the '101 Patent is attached hereto as Exhibit A.

12.     On January 2, 1996, the USPTO duly and legally issued the '546 Patent, entitled "Interactive Nationwide Data Service Communication System for Stationary and Mobile Battery Operated Subscriber Units" after a full and fair examination.  EON is the assignee under an exclusive license of all rights, title, and interest in and to the '546 Patent and possesses all rights of recovery under the '546 Patent, including the right to recover damages for past infringement. The '546 Patent is valid and enforceable.  A true and correct copy of the '546 Patent is attached hereto as Exhibit B.

13.     On January 7, 1997, the USPTO duly and legally issued the '491 Patent, titled "Wireless Modem" after a full and fair examination.  EON is the assignee under an exclusive license of all rights, title and interest in and to the '491 Patent and possesses all rights of recovery under the '491 Patent, including the right to recover damages for past infringement. The '491 Patent is valid and enforceable.  A true and correct copy of the '491 Patent is attached hereto as Exhibit C.

## COUNT I – INFRINGEMENT OF THE '101 PATENT

14.     EON incorporates and realleges the allegations of paragraphs 1-13 as are fully set forth above.

15.     Upon information and belief defendant Landis+Gyr is infringing (literally and/or under the doctrine of equivalents) the '101 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice one or more claims of the '101 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '101 Patent (e.g., two-way communication networks comprising subscriber units, base stations, network hub switching centers, and receivers).  For example, Landis+Gyr's Gridstream RF networks are two-way communication networks that fall within the scope of at least one claim of the '101 Patent.  In addition to its networks and services, Landis sells, offers for sale or imports network components (e.g., intelligent endpoints/meters, collectors, routers) and software (e.g., Command Center software platforms) specially configured for use in and constituting a material portion of the patented communication networks.  Landis+Gyr's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Upon information and belief, Landis+Gyr sells,

offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '101 Patent. Landis+Gyr has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, at least one claim of the '101 Patent alone or jointly with others, including utilities (e.g., Oncor), customers, end users, and/or network component manufacturers.

16.     Upon information and belief, defendant Aclara is infringing (literally and/or under the doctrine of equivalents) the '101 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice at least one claim of the '101 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '101 Patent (e.g., two-way communication networks comprising subscriber units, base stations, network hub switching centers, and receivers). For example, Aclara's STAR Networks are two-way communication networks that fall within the scope of one or more claims of the '101 Patent. In addition to its networks and services, Aclara sells, offers for sale or imports network components (e.g., Meter Transmission Units, Data Collector Units) and software (e.g., Aclara STAR Network Control Computer platforms) specially configured for use in and constituting a material portion of the patented communication networks. Aclara's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use. Upon information and belief, Aclara sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that

infringes one or more claims of the '101 Patent.  Aclara has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '101 Patent alone or jointly with others, including utilities (e.g., Upshur Rural Electric Cooperative), customers, end users, and/or network component manufacturers.

17.     Upon information and belief, defendant Elster is infringing (literally and/or under the doctrine of equivalents) the '101 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice at least one claim of the '101 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '101 Patent (e.g., two-way communication networks comprising subscriber units, base stations, network hub switching centers, and receivers).  For example, Elster's EnergyAxis networks are two-way communication networks that fall within the scope of one or more claims of the '101 Patent.  In addition to its networks and services, Elster sells, offers for sale or imports network components (e.g., Gatekeepers, REX meters, REX-EA meters, A3 Alpha meters) and software (e.g., EnergyAxis Management System software platforms) specially configured for use in and constituting a material portion of the patented communication networks.   Elster's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Upon information and belief, Elster sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '101 Patent.  Elster has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '101 Patent alone or

jointly with others, including utilities (e.g., Austin Energy), customers, end users, and/or network component manufacturers.

18.     Upon information and belief defendant Silver Spring is infringing (literally and/or under the doctrine of equivalents) the '101 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice one or more claims of the '101 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '101 Patent (e.g., two-way communication networks comprising subscriber units, base stations, network hub switching centers, and receivers).   For example, Silver Spring's Smart Energy Networks are two-way communication networks that fall within the scope of one or more claims of the '101 Patent.   In addition to its networks and services, Silver Spring sells, offers for sale or imports network components (e.g., Relays, Access points, Intelligent Endpoints, Silver Spring Gas Interface Management Units) and software (e.g., UtilityIQ software platforms) specially configured for use in and constituting a material portion of the patented communication networks.   Silver Spring's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.   Upon information and belief, Silver Spring sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '101 Patent.   Silver Spring has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '101 Patent alone or jointly with others,

including utilities (e.g., Bluebonnet Electric Cooperative), customers, end users, and/or network component manufacturers.

19.     Upon information and belief defendant Itron is infringing (literally and/or under the doctrine of equivalents) the '101 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice one or more claims of the '101 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '101 Patent (e.g., two-way communication networks comprising subscriber units, base stations, network hub switching centers, and receivers).  For example, Itron's OpenWay networks are two-way communication networks that fall within the scope of at least one claim of the '101 Patent.  In addition to its networks and services, Itron sells, offers for sale or imports network components (e.g., CENTRON meters, OpenWay Gas Modules, Cell Relays) and software (e.g., OpenWay Collection Engine Software Platforms) specially configured for use in and constituting a material portion of the patented communication networks.  Itron's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Upon information and belief, Itron sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '101 Patent.  Itron has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '101 Patent alone or jointly with others, including utilities (e.g., CenterPoint Energy), customers, end users, and/or network component manufacturers.

20.     Upon information and belief defendant Trilliant is infringing (literally and/or under the doctrine of equivalents) the '101 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice one or more claims of the '101 Patent or are specially configured for use in and constitute a material portion of the patented invention claimed by the '101 Patent (e.g., two-way communication networks comprising subscriber units, base stations, network hub switching centers, and receivers).   For example, Trilliant's SecureMesh networks are two-way communication networks that fall within the scope of at least one claim of the '101 Patent.   In addition to its networks and services, Trilliant sells, offers for sale or imports network components (e.g., Collectors, Gateways, Extenders, Repeaters, Meter Modules) and software (e.g., UnitySuite Head-End Software Platforms) specially configured for use in and constituting a material portion of the patented communication networks.   Trilliant's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.   Upon information and belief, Trilliant sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '101 Patent.   Trilliant has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '101 Patent alone or jointly with others, including utilities (e.g., Denton Municipal Electric), customers, end users, and/or network component manufacturers.

21.     Each defendant has committed these acts of infringement without license of authorization.

22.     Upon information and belief, said infringement has been or will be deliberate and willful.

23.     EON is in compliance with the requirements of 35 U.S.C. § 287.

24.     As a result of each defendant's infringement of the '101 Patent, EON has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless each defendant's infringing activities are enjoining by this Court.

25.     EON has suffered and will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting each defendant, it agents, servants, employees, representatives, and all others acting in active concert therewith from infringing the '101 Patent.

## COUNT II – INFRINGEMENT OF THE '546 PATENT

26.     EON repeats and realleges the allegations set forth in paragraphs 1-25 as if those allegations have been fully set forth herein.

27.     Upon information and belief defendant Landis+Gyr is infringing (literally and/or under the doctrine of equivalents) the '546 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice one or more claims of the '546 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '546 Patent (*e.g.*, two-way communication networks comprising subscriber units, base stations, network hub switching centers, and receivers).   For example, Landis+Gyr's Gridstream RF networks are two-way communication networks that fall within the scope of at least one claim of the '546 Patent.   In addition to its networks and services, Landis sells, offers for sale or imports network components

(*e.g.*, intelligent endpoints/meters, collectors, routers) and software (*e.g.*, Command Center software platforms) specially configured for use in and constituting a material portion of the patented communication networks.  Landis+Gyr's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Upon information and belief, Landis+Gyr sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '546 Patent.  Landis+Gyr has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, at least one claim of the '546 Patent alone or jointly with others, including utilities (*e.g.*, Oncor), customers, end users, and/or network component manufacturers.

28.     Upon information and belief, defendant Aclara is infringing (literally and/or under the doctrine of equivalents) the '546 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice at least one claim of the '546 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '546 Patent (*e.g.*, two-way communication networks comprising subscriber units, base stations, network hub switching centers, and receivers).  For example, Aclara's STAR Networks are two-way communication networks that fall within the scope of one or more claims of the '546 Patent.  In addition to its networks and services, Aclara sells, offers for sale or imports network components (*e.g.*, Meter Transmission Units, Data Collector Units) and software (*e.g.*, Aclara STAR Network Control Computer platforms) specially configured for use in and constituting a material portion of the patented

communication networks.  Aclara's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Upon information and belief, Aclara sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes one or more claims of the '546 Patent.  Aclara has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '546 Patent alone or jointly with others, including utilities (*e.g.*, Upshur Rural Electric Cooperative), customers, end users, and/or network component manufacturers.

29.    Upon information and belief, defendant Elster is infringing (literally and/or under the doctrine of equivalents) the '546 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice at least one claim of the '546 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '546 Patent (*e.g.*, two-way communication networks comprising subscriber units, base stations, network hub switching centers, and receivers).  For example, Elster's EnergyAxis networks are two-way communication networks that fall within the scope of one or more claims of the '546 Patent.  In addition to its networks and services, Elster sells, offers for sale or imports network components (*e.g.*, Gatekeepers, REX meters, REX-EA meters, A3 Alpha meters) and software (*e.g.*, EnergyAxis Management System software platforms) specially configured for use in and constituting a material portion of the patented communication networks.  Elster's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce

suitable for substantial non-infringing use.  Upon information and belief, Elster sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '546 Patent.  Elster has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '546 Patent alone or jointly with others, including utilities (*e.g.*, Austin Energy), customers, end users, and/or network component manufacturers.

30.     Upon information and belief defendant Silver Spring is infringing (literally and/or under the doctrine of equivalents) the '546 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice one or more claims of the '546 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '546 Patent (*e.g.*, two-way communication networks comprising subscriber units, base stations, network hub switching centers, and receivers).  For example, Silver Spring's Smart Energy Networks are two-way communication networks that fall within the scope of one or more claims of the '546 Patent.  In addition to its networks and services, Silver Spring sells, offers for sale or imports network components (*e.g.*, Relays, Access points, Intelligent Endpoints, Silver Spring Gas Interface Management Units) and software (*e.g.*, UtilityIQ software platforms) specially configured for use in and constituting a material portion of the patented communication networks.  Silver Spring's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Upon information and belief, Silver Spring sells, offers for sale, or imports two-

way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '546 Patent.  Silver Spring has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '546 Patent alone or jointly with others, including utilities (*e.g.*, Bluebonnet Electric Cooperative), customers, end users, and/or network component manufacturers.

31.     Upon information and belief defendant Itron is infringing (literally and/or under the doctrine of equivalents) the '546 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice one or more claims of the '546 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '546 Patent (*e.g.*, two-way communication networks comprising subscriber units, base stations, network hub switching centers, and receivers).  For example, Itron's OpenWay networks are two-way communication networks that fall within the scope of at least one claim of the '546 Patent.  In addition to its networks and services, Itron sells, offers for sale or imports network components (*e.g.,* CENTRON meters, OpenWay Gas Modules, Cell Relays) and software (*e.g.*, OpenWay Collection Engine Software Platforms) specially configured for use in and constituting a material portion of the patented communication networks.  Itron's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Upon information and belief, Itron sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a

product or process that infringes the '546 Patent.  Itron has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '546 Patent alone or jointly with others, including utilities (*e.g.*, CenterPoint Energy), customers, end users, and/or network component manufacturers.

32.     Upon information and belief defendant Trilliant is infringing (literally and/or under the doctrine of equivalents) the '546 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice one or more claims of the '546 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '546 Patent (*e.g.*, two-way communication networks comprising subscriber units, base stations, network hub switching centers, and receivers).   For example, Trilliant's SecureMesh networks are two-way communication networks that fall within the scope of at least one claim of the '546 Patent.  In addition to its networks and services, Trilliant sells, offers for sale or imports network components (*e.g.*, Collectors, Gateways, Extenders, Repeaters, Meter Modules) and software (*e.g*., UnitySuite Head-End Software Platforms) specially configured for use in and constituting a material portion of the patented communication networks.  Trilliant's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Upon information and belief, Trilliant sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '546 Patent.  Trilliant has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more

claims of the '546 Patent alone or jointly with others, including utilities (*e.g.*, Denton Municipal Electric), customers, end users, and/or network component manufacturers.

33.     Each defendant has committed these acts of infringement without license of authorization.

34.     Upon information and belief, said infringement has been or will be deliberate and willful.

35.     EON is in compliance with the requirements of 35 U.S.C. § 287.

36.     As a result of each defendant's infringement of the '546 Patent, EON has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless each defendant's infringing activities are enjoining by this Court.

37.     EON has suffered and will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting each defendant, it agents, servants, employees, representatives, and all others acting in active concert therewith from infringing the '546 Patent.

### <u>COUNT III – INFRINGEMENT OF THE '491 PATENT</u>

38.     EON repeats and realleges the allegations set forth in paragraphs 1-37 as if those allegations have been fully set forth herein.

39.     Upon information and belief defendant Landis+Gyr is infringing (literally and/or under the doctrine of equivalents) the '491 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice one or more claims of the '491 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '491 Patent (*e.g.*, two-way

communication networks comprising subscriber units, base stations and/or network hub switching centers, and modems).  For example, Landis+Gyr's Gridstream RF networks are two-way communication networks that fall within the scope of at least one claim of the '491 Patent. Landis+Gyr's two-way communication networks provide, for example, alternative communication paths for digital messages to travel between a utility's command center and intelligent endpoints as claimed by the '491 Patent.  In addition to their networks and services, Landis+Gyr sells, offers for sale or imports network components (*e.g.*, intelligent endpoints/meters, collectors, routers) and software (*e.g.*, Command Center software platforms) specially configured for use in and constituting a material portion of the patented communication networks.  Landis+Gyr's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Upon information and belief, Landis+Gyr sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '491 Patent.  Landis+Gyr has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '491 Patent alone or jointly with others, including utilities (*e.g.*, Oncor), customers, end users, and/or network component manufacturers.

40.     Upon information and belief defendant Aclara is infringing (literally and/or under the doctrine of equivalents) the '491 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice one or more claims of the '491 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '491 Patent (*e.g.*, two-way

communication networks comprising subscriber units, base stations and/or network hub switching centers, and modems). For example, Aclara's STAR Networks are two-way communication networks that fall within the scope of at least one claim of the '491 Patent. Aclara's two-way communication networks provide, for example, alternative communication paths for digital messages to travel between a utility's command center and Meter Transmission Units as claimed by the '491 Patent. In addition to their networks and services, Aclara sells, offers for sale or imports network components (*e.g.*, Meter Transmission Units, Data Collector Units) and software (*e.g.*, Aclara STAR Network Control Computer platforms) specially configured for use in and constituting a material portion of the patented communication networks. Aclara's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use. Upon information and belief, Aclara sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '491 Patent. Aclara has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '491 Patent alone or jointly with others, including utilities (*e.g.*, Upshur Rural Electric Cooperative), customers, end users, and/or network component manufacturers.

41. Upon information and belief defendant Elster is infringing (literally and/or under the doctrine of equivalents) the '491 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice one or more claims of the '491 Patent or are especially configured for use in and constitute a

material portion of the patented invention claimed by the '491 Patent (*e.g.*, two-way communication networks comprising subscriber units, base stations and/or network hub switching centers, and modems). For example, Elster's EnergyAxis networks are two-way communication networks that fall within the scope of one or more claims of the '491 Patent. Elster's two-way communication networks provide, for example, alternative communication paths for digital messages to travel between a utility's command center and REX/REX-EA/A3 Alpha meters as claimed by the '491 Patent. In addition to their networks and services, Elster sells, offers for sale or imports network components (*e.g.*, Gatekeepers, REX meters, REX-EA meters, A3 Alpha meters) and software (*e.g.*, EnergyAxis Management System software platforms) specially configured for use in and constituting a material portion of the patented communication networks. Elster's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use. Upon information and belief, Elster sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '491 Patent. Elster has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '491 Patent alone or jointly with others, including utilities (*e.g.*, Austin Energy), customers, end users, and/or network component manufacturers.

42.     Upon information and belief defendant Silver Spring is infringing (literally and/or under the doctrine of equivalents) the '491 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms and services that provide utilities and their customers with telemetry functionality and practice

one or more claims of the '491 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '491 Patent (*e.g.*, two-way communication networks comprising subscriber units, base stations and/or network hub switching centers, and modems).  For example, Silver Spring's Smart Energy Networks are two-way communication networks that fall within the scope of one or more claims of the '491 Patent. Silver Spring's two-way communication networks provide, for example, alternative communication paths for digital messages to travel between a utility's back office and intelligent endpoints as claimed by the '491 Patent.   In addition to their networks and services, Silver Spring sells, offers for sale or imports network components (e.g., Access Points, Relays, Silver Spring Gas Interface Management Units, Intelligent Endpoints) and software (e.g., UtilityIQ software platforms) specially configured for use in and constituting a material portion of the patented communication networks.  Silver Spring's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.   Upon information and belief, Silver Spring sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '491 Patent.   Silver Spring has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '491 Patent alone or jointly with others, including utilities (*e.g.*, Bluebonnet Electric Cooperative), customers, end users, and/or network component manufacturers.

43.     Upon information and belief defendant Itron is infringing (literally and/or under the doctrine of equivalents) the '491 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms

and services that provide utilities and their customers with telemetry functionality and practice one or more claims of the '491 Patent or are especially configured for use in and constitute a material portion of the patented invention claimed by the '491 Patent (*e.g.*, two-way communication networks comprising subscriber units, base stations and/or network hub switching centers, and modems).   For example, Itron's OpenWay networks are two-way communication networks that fall within the scope of one or more claims of the '491 Patent. Itron's two-way communication networks provide, for example, alternative communication paths for digital messages to travel between a utility's command center and CENTRON Meters as claimed by the '491 Patent.  In addition to their networks and services, Itron sells, offers for sale or imports network components (*e.g.*, CENTRON meters, OpenWay Gas Modules, Cell Relays) and software (*e.g.*, OpenWay Collection Engine Software Platforms) specially configured for use in and constituting a material portion of the patented communication networks.  Itron's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.   Upon information and belief, Itron sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '491 Patent.  Itron has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '491 Patent alone or jointly with others, including utilities (*e.g.,* CenterPoint Energy), customers, end users, and/or network component manufacturers.

44.     Upon information and belief defendant Trilliant is infringing (literally and/or under the doctrine of equivalents) the '491 Patent by making, using, selling, offering for sale, or importing two-way communication networks, network components, related software platforms

and services that provide utilities and their customers with telemetry functionality and practice one or more claims of the '491 Patent or are specially configured for use in and constitute a material portion of the patented invention claimed by the '491 Patent (*e.g.*, two-way communication networks comprising subscriber units, base stations and/or network hub switching centers, and modems).  For example, Trilliant's SecureMesh networks are two-way communication networks that fall within the scope of one or more claims of the '491 Patent.  Trilliant's two-way communication networks provide, for example, alternative communication paths for digital messages to travel between a utility's command center and Meter Modules as claimed by the '491 Patent.  In addition to their networks and services, Trilliant sells, offers for sale or imports network components (*e.g*., Collectors, Gateways, Extenders, Repeaters, Meter Modules) and software (*e.g*., UnitySuite Head-End Software Platforms) specially configured for use in and constituting a material portion of the patented communication networks.  Trilliant's two-way communication networks, network components, and related software platforms are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Upon information and belief, Trilliant sells, offers for sale, or imports two-way communication networks, network components, and related software platforms in the United States knowing that they will become a material part of a product or process that infringes the '491 Patent.  Trilliant has been and is infringing, directly or indirectly, literally or under the doctrine of equivalents, one or more claims of the '491 Patent alone or jointly with others, including utilities (*e.g.*, Denton Municipal Electric), customers, end users, and/or network component manufacturers.

45.     Each defendant has committed these acts of infringement without license of authorization.

46.     As a result of each defendant's infringement of the '491 Patent, EON has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless each defendant's infringing activities are enjoining by this Court.

47.     EON has suffered and will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting each defendant, it agents, servants, employees, representatives, and all others acting in active concert therewith from infringing the '491 Patent.

48.     Upon information and belief, said infringement has been or will be deliberate and willful.

49.     EON is in compliance with the requirements of 35 U.S.C. §287.

**PRAYER FOR RELIEF**

WHEREFORE, EON prays for the following relief:

A.     That each Defendant be adjudged to have infringed each of the Patents-in-Suit, directly or indirectly by way of inducement or contributory infringement, literally or under the doctrine of equivalents;

B.     That each Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be preliminarily and permanently restrained and enjoined from directly or indirectly infringing each of the Patents-in-Suit;

C.     An award of damages pursuant to 34 U.S.C. § 284 sufficient to compensate EON for the Defendants' past infringement and any continuing or future infringement up until the date Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

D.      An assessment of pre-judgment and post-judgment interest and costs against Defendants, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

E.      That Defendants be directed to pay enhanced damages, including EON's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285; and

F.      That EON have such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

EON demands a trial by jury of any and all issues triable of right before a jury.

Dated: June 17, 2011                              Respectfully Submitted,

*/s/ Jeffery R. Johnson*
Jeffery R. Johnson
Texas Bar No. 24048572
Daniel R. Scardino
Texas Bar No. 24033165
Cary J. Ferchill
Texas Bar No. 06906900
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX  78701
Tel. (512) 474-2449
Fax (512) 474-2622
jjohnson@reedscardino.com
dscardino@reedscardino.com
cferchill@reedscardino.com

*/s/ Deron R. Dacus*
Deron R. Dacus
Texas Bar No. 00790553
Ramey & Flock, P.C.
100 East Ferguson Street, Suite 500
Tyler, TX 75702
Telephone: 903-597-3301
Fax: 903-567-2143
derond@rameyflock.com
ATTORNEYS FOR PLAINTIFF
EON CORP. IP HOLDINGS, LLC