IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| EON CORP IP HOLDINGS, LLC., <br><br> Plaintiff, <br><br> v. <br><br> LANDIS+GYR, INC., et al., <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> §     CASE NO. 6:11-CV-317-LED-JDL <br> § <br> §     JURY TRIAL REQUESTED <br> § <br> § <br> § |

**MEMORANDUM OPINION AND ORDER**

This claim construction opinion construes one disputed claim term in U.S. Patent No. 5,592,491 (the "'491 patent") entitled "Wireless Modem" as asserted in the above captioned case. The parties agreed no *Markman* hearing was necessary, and the Court accordingly resolves the dispute on the briefing.

**OVERVIEW OF THE PATENT**

The '491 patent is a continuation-in-part of U.S. Patent No. 5,388,101 ("the '101 patent"), which the Court previously construed in the instant action (Doc. No. 249). The '101 patent provides background for the subject matter of the '491 patent and is expressly incorporated into the disclosure of the '491 patent. *See* '491 Patent at 1:17-19. The '101 patent discloses an "interactive two way data service network for conveying synchronously timed digital messages point to point through the network." '101 Patent at 1:8-10. The network consists of "portable subscriber units of milliwatt transmitting power capacity," *id.* at 3:35–36, base stations capable of transmitting data to the subscriber units, *id.* at 3:62–65, and "receive only

1

stations" that relay communications from the subscriber units to the base stations. *Id.* at 3:65–4:2. Under certain conditions, however, a portable subscriber unit is unable to receive transmissions from the local base station:

> For example, a user may purchase a subscriber unit and place the subscriber unit in an area which is not yet equipped with or is not covered by a local base station repeater cell. Additionally, a subscriber unit may be located within range of a local base station repeater cell, but may be positioned, for example, in a basement or other physical location which prevents the subscriber unit from receiving transmissions from the local base station repeater cell.

'491 Patent at 1:44-52.

To overcome this problem, the '491 patent discloses "a modem which is used to enable communications between a subscriber unit and a local base station repeater cell when the subscriber units are unable to receive rf transmissions from the local base station repeater cell." *Id.* at 2:22-27; *See also id.* at Fig. 2 (reproduced below). The specification explains that the object of the invention is to provide a method for communication that did not significantly increase the cost of communication:

> It is therefore an object of the present invention to provide a system to enable communications between a subscriber unit and a local base station repeater cell in areas where such communication has previously been impaired, which does not require the addition of numerous costly local station repeater cells, which is not dependent on the physical location of the subscriber unit, and which does not significantly increase the cost of communication within the two way interactive broadcast data service network.

'491 Patent at 2:14-22 ("Disclosure of the Invention").



Figure 2 shows a subscriber unit 12 in communication with a local base station repeater cell 10 across two paths. When the subscriber unit is able to detect an rf signal from local base station repeater cell, the subscriber unit remains on "Path A," the default position. *Id.* at 3:39-42. If, however, the subscriber unit is unable to receive rf signals from the local base station repeater cell, the switching means selects "Path B" and communication between the subscriber unit and local base station repeater cell occurs along Path B via the modem 22. *Id.* at 3:50-55. Thus, the '491 patent discloses a system and method for "two-way communication between local base station repeater cell 10 and subscriber unit 12 even if subscriber unit 12 is unable to receive rf signals from the local base station repeater cell." *Id.* at 4:23-27.

    Claim 1 contains the disputed term and recites the following:

 A two-way communication network comprising:
a network hub switching center;
subscriber units dispersed at various locations within a predetermined geographic
    area, said subscriber units including switching means for selecting a
    communication path within said network,
local base station repeater cell communicating with identified individual subscriber
    units within a local base station geographic area associated with said local
    base station repeater cell, said local base station repeater cell further

3

>   comprising,
>       base station data processing and communication unit for transmitting to a set
>           of said subscriber units contained within said local base station geographic
>           area associated with said local base station repeater cell and receiving from
>           a subset of said set of local subscriber units multiplexed synchronously
>           related digital data messages of variable lengths for point-to-point
>           communication between said local base station repeater cell and said subset
>           of said local subscriber units,
>   ***reception for receiving and processing data messages from said set of local***
>       ***subscriber units*** comprising a local remote receiver disposed within one of
>           a plurality of cell subdivision sites partitioned from said local base station
>           geographic area associated with said local base station repeater cell, said
>           plurality of cell subdivision sites dispersed over said local base station
>           geographic area, said local remote receiver being adapted to receive low
>           power digital messages transmitted from said local subscriber units within
>           range of said local remote receiver,
>   said set of local subscriber units including low power mobile units located within
>       said local base station geographic area, each of said local subscriber units
>       adapted to communicate with said local base station repeater cell by way of
>       digital data signals of variable lengths synchronously related to a base station
>       broadcast signal and timed for multiplexed message transmission, and
>   a modem communicatively coupled to said local subscriber units and said local base
>       station repeater cell for transferring said multiplexed synchronously related
>       digital data messages of variable lengths between said set of local subscriber
>       units and said local base station repeater cell if said local subscriber units are
>       unable to directly communicate with said local base station repeater cell.

'491 Patent at 6:16-64 (Claim 1)(emphasis added).

## CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and

customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of

the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Springs Window Fashions LP v. Novo Indus., LP*, 323 F.3d 989, 994 (Fed. Cir. 2003) ("The disclaimer . . . must be effected with 'reasonable clarity and deliberateness.'") (citations omitted). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic

evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## DISCUSSION

A. Disputed Terms

| Claim Language | Plaintiff's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|---|
| 1. "reception for receiving and processing data messages from said set of local subscriber units" | | | |
| '491: 1 | The term is not governed by 35 U.S.C. § 112, ¶ 6 and no construction is necessary | Term is indefinite or it should be construed under 35 U.S.C. § 112, ¶ 6 as: Function: "receiving and processing data messages from said set of local subscriber units." Structure: "receive-only remote receiver" | The term is not governed by 35 U.S.C. § 112, ¶ 6 and no construction is necessary |

7

The primary dispute between the parties is whether the term "reception for receiving and processing data messages from said set of local subscriber units" is governed by 35 U.S.C. § 112, ¶ 6. Defendants argue that the presumption that this claim limitation, which lacks the word "means," is not subject to § 112, ¶ 6, is rebutted by the word "reception," which is not recognized as the name of a structure. (Doc. No. 336) DEFS.' BR. at 3. Defendants cite dictionary definitions to argue that the term "reception" does not sufficiently denote structure. *See* DEFS.'S BR. at 5, citing WEBSTER'S NEW WORLD DICTIONARY 1120 (3d Coll. Ed., 4th prtg. 1989) ("a receiving or being received…Radio, TV the manner of receiving, with reference to the relative quality of reproduction…"); THE AMERICAN HERITAGE COLLEGE DICTIONARY 1033 (2d College ed. 1991); MERRIAM-WEBSTER NINTH NEW COLLEGIATE DICTIONARY 982 (9th ed. 1988). Defendants further argue that the patentee's removal of the term "means" from Claim 1 during the prosecution of the claim was precisely because there was insufficient structure recited in the claim to perform the function of "receiving and processing data from said local subscriber units." DEFS.' BR. at 6. Defendants then argue that the structure corresponding to the claimed function of "receiving and processing data from said set of local subscriber units" is a receive-only receiver 16. *Id.* at 7.

Eon argues that the term is not governed by 35 U.S.C. § 112, ¶ 6 because it does not contain the word "means," as that word was removed during the prosecution of the claim. (Doc. No. 321) PL.'S BR. at 7. Because the term does not contain the word "means," Eon argues Defendants cannot overcome the rebuttable presumption it is not a means-plus-function term. *Id.* Eon then argues that even if the term included "means" it would not fall under 35 U.S.C. § 112, ¶ 6 because it discloses sufficient structure to perform the claimed function of "receiving and processing." *Id.* at 8. Specifically, Eon points to the "local remote receiver" as the sufficient

8

structure in the claim. *Id.* Finally, Eon argues that the language of the claim is not highly technical or complex, and therefore could easily be understood by a jury without construction from the Court. *Id.*

When a claim term does not use the word "means," a rebuttable presumption arises that the term is not a means-plus-function limitation governed by 35 U.S.C. § 112, ¶ 6. *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1369 (Fed. Cir. 2002). To rebut the presumption, a party must show "that the claim term fails to recite sufficiently definite structure or else recites a function without reciting sufficient structure for performing that function." *Id.* A claim term recites sufficient structure if it has an understood meaning in the art. *Id.* It is proper to consult the intrinsic record, including the written description, to determine whether the presumption that a claim lacking the term means recites sufficiently definite structure. *Inventio AG v. Thyssenkrupp Elevator Americas Corp.,* 649 F.3d 1350, 1357 (Fed.Cir.2011). The issue is whether a skilled artisan, after reading the patent, would conclude that the limitation is so devoid of structure that the drafter constructively engaged in means-plus-function claiming. *Id.*

Because the term does not contain the word "means," the Court starts with the presumption that it is not governed by 35 U.S.C. § 112, ¶ 6. *MIT v. Abacus Software*, 462 F.3d 1344, 1353 (Fed. Cir. 2006). Similar to "reception for," other terms lacking "means" have been considered to potentially invoke 35 U.S.C. § 112, ¶ 6, including, "mechanism for," "module for," "device for," "unit for," "component for," "element for," "member for," "apparatus for," "machine for," or "system for." *See, e.g., Welker Bearing Co., v. PHD, Inc.*, 550 F.3d 1090, 1096 (Fed. Cir. 2008); *Massachusetts Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006); *Personalized Media*, 161 F.3d at 704; *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1214-1215 (Fed. Cir. 1998). In assessing whether such terms invoke § 112, ¶ 6,

courts look to whether the term is "simply a nonce word or a verbal construct that is not recognized as the name of structure and is simply a substitute for the term 'means for.'" *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1360 (Fed. Cir. 2004).

On its own, the Court finds that the word "reception," being merely the noun for the recited function "receiving," would not be recognized by one of ordinary skill in the art as the name of a structure. *Id., see* WEBSTER'S NEW WORLD DICTIONARY 1120 (3d Coll. Ed., 4th prtg. 1989) ("a receiving or being received…"). Further, there is no adjective that endows the word "reception" with physical or structural parameters that would be known in the art. *See Welker Bearing Co.*, 550 F.3d at 1096 (distinguishing "mechanism for" as sufficiently structural when coupled with the adjective "detent."). Accordingly, the Court concludes that "reception" is nothing more than a substitute for the term "means."

The Court's finding that "reception" is a substitute for "means" shifts the presumption to presume that this limitation falls under § 112, ¶ 6.[1] However, that presumption is overcome because "the claim recites sufficient structure for performing the described functions in their entirety." *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259 (Fed. Cir. 2008). In this regard, Eon argues that even if the limitation expressly said "means," because it is immediately followed by "comprising a local remote receiver," Claim 1 recites sufficient structure such that the limitation does not fall under § 112, ¶ 6 . PL.'S BR. at 8. Defendants argue that the structure Eon identifies is not sufficient to find § 112, ¶ 6 does not govern this limitation because it does not "entirely" perform the recited function; namely, the "processing" recited in the claimed function. DEFS.' BR. at 6–7. There is no dispute that Claim 1 recites a local remote receiver that is "adapted to receive." '491 patent at 6:45–46. Accordingly, from the claim language itself, one of

---

[1] Even if the presumption remained that § 112, ¶ 6 does not apply, the Court's conclusion remains the same because Defendants have failed to rebut that presumption by failing to demonstrate that there is insufficient structure to perform the recited function.

ordinary skill in the art would be able to derive a structural connotation at least for the receiving function. Thus, the issue is whether the local remote receiver performs the "processing" function, and accordingly the entire recited function. Defendants themselves contend that "processing" in the recited claimed function "refers to the relaying of the received data messages from the subscriber units to the base station data processing and communications unit." *Id.* at 7. In this regard, the remote receiver does perform the recited processing function as expressly laid out in the specification: "subscriber unit 12 would respond or transmit data messages back to local base station repeater cell 10 *via remote receiver* 16." '491 patent at 4:53–55 (emphasis added).[2] Thus, read in context, the claim language connotes structure adequate to perform the recited receiving and processing function, such that the claim limitation is not governed by § 112, ¶ 6. *See Power Integrations, Inc. v. Fairchild Semiconductor Intern, Inc.*, 711 F.3d 1348, 1366 (Fed. Cir. 2013) ("an ordinarily skilled artisan reading the claim limitation in the context of the claimed invention, and in light of the specification, would understand that the limitation connotes 'sufficiently definite structure for performing the identified functions.'").

Therefore, the Court finds this term is not governed by 35 U.S.C. § 112, ¶ 6, and no further construction is necessary.

## CONCLUSION

For the foregoing reasons, the Court resolves the parties' claim dispute finding the claim term "reception for receiving and processing data messages from said set of local subscriber units" is not governed by 35 U.S.C. § 112, ¶ 6 and requires no further construction at this time.

---

[2] Not coincidentally, this is the exact structure Defendants point to as the proposed corresponding structure. DEFS.' BR. at 8.

**So ORDERED and SIGNED this 2nd day of May, 2013.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE